IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Case No. 3:23CR51(RCY) |
| ) | |
| VICTOR MANUEL CASTRO-ALEMAN, ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Victor Manuel Castro-Aleman's Motion to Dismiss the Indictment (ECF No. 17). The Motion has been fully briefed. On July 27, 2023, the Court held a hearing on Defendant's Motion to Dismiss the Indictment and indicated that an opinion was forthcoming. For the reasons stated herein, the Court will deny the Motion to Dismiss.

**I. FACTUAL ALLEGATIONS**

On April 20, 2023, a grand jury returned an Indictment (ECF No. 1) charging Victor Manuel Castro-Aleman ("Mr. Castro-Aleman" or "the Defendant") with one count of Illegal Reentry After Felony Conviction, in violation of 8 U.S.C. § 1326(a) and (b)(1). As stated in the Indictment, the instant motion and attached exhibits, and the response to that motion, that charge is based upon the following alleged facts.

Mr. Castro-Aleman was born in El Salvador and fled the country after his father was killed by the left-wing faction during the country's civil war in 1973. (Mot. Dismiss 1, ECF No. 17.) Mr. Castro-Aleman came to the United States when he was eight years old, first arriving in California and moving to Virginia in the 1980's. (*Id.*) Sometime in the 1980's, he was issued a work permit, along with a social security number. (*Id.*)

Mr. Castro-Aleman was convicted of driving under the influence four times between 2009 and 2014, in Chesterfield County, Virginia. (Opp'n Mot. Dismiss 1, ECF No. 19.) On the third charge, Mr. Castro-Aleman was sentenced to five years imprisonment. (*Id*. 2.) On the fourth charge, he was sentenced to another five years plus twelve months after he presented a driver's license falsely identifying himself as a resident of California. (*Id*.) In total, Mr. Castro-Aleman has been sentenced to over twelve years imprisonment. (*Id*.)

Immigrations and Customs ("ICE") officials first encountered Mr. Castro-Aleman after he presented agents with a false identity and claimed to be a United States citizen while in custody at Riverside Regional Jail in 2015. (*Id*.) In December 2015, ICE completed its investigation of these claims and issued Mr. Castro-Aleman a Notice to Appear in removal proceedings under Section 240 of the Immigration and Nationality Act. (*Id*.) The Notice to Appear charged that the Defendant was subject to removal from the United States for three reasons: (1) being an alien present in the United States without being admitted or paroled; (2) being an alien who had been convicted of, or had admitted to committing acts that constitute the essential elements of, a crime involving moral turpitude; and (3) being an alien who had been convicted of two or more offenses for which the aggregate sentences of incarceration exceeded five years. (*Id*.)

In February 2016, Mr. Castro-Aleman appeared *pro se* before an immigration judge, Judge Snow, and testified that he was unable to find a lawyer. (Mot. Dismiss 2.) Judge Snow asked Mr. Castro-Aleman if he had any fear of returning to El Salvador. Mr. Castro-Aleman confirmed that he did. (*Id*. 3; Opp'n Mot. Dismiss 3.) The judge then inquired about Mr. Castro-Aleman's ties to the United States, in response, Mr. Castro-Aleman testified that his ties included his two children, both natural born citizens, and his mother, who is either a legal permanent resident or a citizen. (Mot. Dismiss 3.) At the conclusion of the hearing, Judge Snow directed a correctional

officer to provide Mr. Castro-Aleman with an I-589 asylum form to fill out and return within three weeks of the hearing. (Opp'n Mot. Dismiss 3–4.) The judge closed by noting that "from what you've told me so far, it doesn't look real good but I won't make any judgments until I give you a full and fair hearing on your application." (*Id*. 4.)

On March 9, 2016, Mr. Castro-Aleman appeared again before Judge Snow. Judge Snow noted that he never received the I-589 form from Mr. Castro-Aleman, and Mr. Castro-Aleman said it was because he was unable to obtain a copy of his father's death certificate. (Mem. Supp. Mot. Dismiss Ex. 4 at 2, ECF No. 18-2.) Judge Snow asked Mr. Castro-Aleman if he wanted additional time, but Mr. Castro-Aleman declined and requested voluntary departure. (*Id*. 3.) Judge Snow noted that Mr. Castro-Aleman was not a good candidate for voluntary departure based on his criminal record and instead asked if Mr. Castro-Aleman wanted an immediate departure. (*Id*.) Mr. Castro-Aleman accepted the immediate departure, noting that he was unable to obtain his father's death certificate as evidence for an asylum claim. (*Id*.) Judge Snow asked Mr. Castro-Aleman "[d]o you want to accept it as final and be removed or appeal it to a higher court?" (*Id*. 4.) Mr. Castro-Aleman responded "[n]o" and requested information as to how he would be returned to his country since he lacked a passport or identification. (*Id*.) Mr. Castro-Aleman then started to ask a question of the judge, but the recording abruptly ends. (*Id*.)

## II. RELEVANT PROCEDURAL HISTORY

On April 20, 2023, the grand jury returned an Indictment charging Defendant Castro-Aleman with one count of Illegal Reentry After Felony Conviction, in violation of 8 U.S.C. § 1326(a) and (b)(1). (ECF No. 1.) Mr. Castro-Aleman had his initial appearance on April 24, 2023 and was arraigned on April 27, 2023. (ECF Nos. 6, 10.) On May 1, 2023, the Court issued a Criminal Scheduling Order, setting an initial trial date of June 26, 2023. (ECF No 12.)

On May 8, 2023, the Defendant filed his first Motion to for Extension of Time to File Pretrial Motions, which the Court granted the next day. (ECF Nos. 13, 14.) On May 23, Defendant filed a second Motion for Extension of Pretrial Motions. (ECF No. 15.) The Court again granted that motion. (ECF No. 16.) On June 5, 2023, the Defendant filed the instant Motion to Dismiss the Indictment. (ECF No. 17.) The Government filed its Response on June 19, 2023 (ECF No. 19), and the Defendant filed his Reply on June 23, 2023 (ECF No. 21). The Court vacated the trial date pending resolution of pretrial motions, including the pending Motion to Dismiss. (ECF No. 20.) On July 27, 2023, the Court held a hearing regarding the present Motion, at the conclusion of which the Court informed the parties that it would defer ruling on the matter, pending issuance of a formal opinion.

### III. LEGAL STANDARD

A criminal indictment must contain every essential element of the offenses charged, fairly inform a defendant of the charges, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offenses. *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014). A defendant "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits," including "a defect in the indictment such as a failure to state an offense." Fed. R. Crim. P. 12(b)(1), 12b(3)(B). When considering a motion to dismiss, "the indictment allegations are presumed to be true, and the motion should not ordinarily be used as a vehicle to test the sufficiency of the evidence behind the allegations." *United States v. Lewis*, 262 F. Supp. 3d 365, 368 (2017) (*quoting United States v. Treacy*, 677 F. App'x 869, 873 (4th Cir. 2017). Thus, to challenge the sufficiency of an indictment, a defendant must demonstrate that the allegations therein, even if true, would not state an offense. *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). The district court may dismiss an indictment before trial based upon "an

infirmity of law," but not based upon a determination of facts that will be developed at trial. *Lewis*, 262 F. Supp. 3d at 368.

### IV. ANALYSIS

Mr. Castro-Aleman moves the Court to dismiss his Indictment on the basis that the removal order underlying his prior deportation is invalid because the immigration judge violated due process by failing to inform him that his own testimony could be sufficient evidence to support an asylum request and because the hearing was fundamentally unfair.

Section 1326 of the Immigration and Nationality Act establishes criminal penalties for any noncitizen who:

> has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter . . . enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act.

8 U.S.C. § 1326(a). Further, 8 U.S.C. § 1326(d) outlines the circumstances when a defendant may collaterally attack their prior removal order. The statute provides that, in order to challenge the validity of a deportation order, the noncitizen must satisfy three requirements: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *See also United States v. Fernandez Sanchez*, 46 F.4th 211, 218 (4th Cir. 2022); *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005). A defendant must satisfy all three of the above

requirements to prevail on their challenge. *United States v. Wilson*, 316 F.3d 506, 509 (4th Cir. 2003), *overruled on other grounds by Lopez v. Gonzales*, 549 U.S. 47 (2006).

The exact measures required to exhaust administrative remedies in the § 1326(d)(1) context depend on the specific circumstances of removal, but a defendant is generally required to move to reopen or rescind their deportation hearing or to appeal the deportation order. *United States v. Munoz-Giron*, 943 F. Supp. 2d 613, 621 (E.D. Va. 2013) (citing *United States v. Copeland*, 376 F.3d 61, 67 (2d Cir. 2004). Additionally, if these motions and/or appeals are denied, a defendant must appeal to the Bureau of Immigrant Affairs. *Id*. at 620. The Supreme Court has established that, if a defendant waives their right of appeal at any point in this process, that waiver must be knowingly and intelligently made. *Narine v. Holder*, 559 F.3d 246, 249 (4th Cir. 2009) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987)). A defendant's obligation to satisfy the exhaustion requirement of 8 U.S.C. § 1326(d)(1) and the deprivation element of § 1326(d)(2) may be excused when any waiver of appeal was not made knowingly and involuntarily. *Munoz-Giron*, 943 F. at 621. When undertaking a § 1326(d) analysis, the first and second factors—exhaustion of remedies and deprivation of opportunity for judicial review—may be analyzed together, as courts have found that both factors are excluded when the waiver itself is invalid. *See United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir. 2012).

### A. Failure to Exhaust Remedies and Deprivation of Judicial Review

Mr. Castro-Aleman contends that ambiguity in the immigration judge's questions during his removal hearing rendered him unable to make a knowing waiver of his right to appeal. As a result, he argues, he is excused from having to exhaust all remedies before launching a collateral attack in the present Motion to Dismiss.

A noncitizen's knowing and voluntary waiver of appeal with respect to an order of deportation will bar collateral attack on the order in a subsequent illegal reentry prosecution under § 1326(d). *United States v. Lopez*, 667 F. App'x 837, 838 (4th Cir. 2016). Although the Fourth Circuit has thus far been silent as to which party bears the burden of establishing the burden of a noncitizen's waiver of administrative and judicial review rights in immigration proceedings, sister circuits and other judges within the Eastern District of Virginia have found that the majority approach is to place the burden to prove invalidity of the waiver on the defendant. *See United States v. Garcia*, No. 3:19-cr-29, 2019 WL 4195345, at *10 (E.D. Va. Sept. 4, 2019) ("[A]lthough the Government must demonstrate the existence of a written waiver, it is the defendant's burden to prove that the waiver is invalid"); *see also United States v. Romero-Diaz*, No. 3:22-cr-177, 2023 WL 2775144, at *5 n.11 (E.D. Va. Apr. 4, 2023) (recognizing "that *Garcia* reflects the correct position"); *United States v. Soto-Mateo*, 799 F.3d 117, 120–22 (1st Cir. 2015) (holding that the noncitizen bears the burden of proving that the waiver was invalid); *Richardson v. United States*, 558 F.3d 216, 219–22 (3d Cir. 2009) (same). This approach is consistent with the underlying statute. By requiring proof of each of the three listed elements, § 1326(d) places the burden on the defendant to demonstrate entitlement to relief. It therefore follows that the defendant also bears the burden of proving their eligibility for any exception to those statutory requirements. *See Garcia*, 2019 WL 4195345, at *11 (citing *Soto-Mateo*, 799 F. 3d at 121).

During the March 2016 removal hearing, the immigration judge responded to Mr. Castro-Aleman's request for voluntary departure by pointing out that he was a poor candidate for it due to his prior criminal record. (Mem. Supp. Mot. Dismiss Ex. 4, 3, ECF No. 18-2.) Mr. Castro-Aleman then asked, "What do I have to do so you can deport me?", to which the judge responded, "I can enter the order right now. Is that what you'd like?" (*Id.*) Mr. Castro-Aleman responded in

the affirmative, briefly explaining that he was unable to find any additional evidence. (*Id.*) The judge then entered the removal order. After entering the order, the judge asked Mr. Castro-Aleman if he wished to "accept it as final and be removed or appeal it to a higher court." (*Id.* 4.) Mr. Castro-Aleman responded: "No. The only thing is that I don't have a passport or any ID. So I just want to know what do I need so you can send me back to my country." (*Id.*) The judge responded that "the government will work on that for you now that you've been deported." (*Id.*) Mr. Castro-Aleman then thanked him. (*Id.*)

      The Court finds that Mr. Castro-Aleman cannot meet his burden to show that the waiver of his right to appeal was not knowing and voluntary. Although Judge Snow's question regarding appeal was admittedly compound and thus potentially ambiguous, the Defendant's response strongly indicates that he was informed of the option to appeal and instead chose not to prolong execution of the removal order. Alone, Mr. Castro-Aleman's response of "No" in response to the judge's compound question may not indicate successful waiver, but the statements that precede and immediately follow this response add critical context to the Defendant's intent. First, Mr. Castro-Aleman expressed to the immigration judge a desire to promptly return to El Salvador. (*Id.* 3 ("What do I have to do so you can deport me?").) This apparent desire for a quick removal supports a conclusion that the subsequent waiver was valid. *Soto-Mateo*, 799 F.3d at 121.

      Second, the Court finds that Judge Snow's use of the phrase "appeal to a higher court" was sufficient to inform the Defendant of his options. In *Narine v. Holder*, the Fourth Circuit found that an unrepresented alien did not validly waive his appeal when he responded affirmatively to the immigration judge's question "Do you accept this as a final order?" 559 F.3d 246, 248 (4th Cir. 2009). There, the court determined that "final decision" is a "term of art" that is unlikely to be understood by an unrepresented, non-native English speaker in a high stakes hearing. *Id.* at

250. In the present case, while Judge Snow did use the term "final," he immediately followed his use of the term with the phrase "and be removed", further clarifying the implications of Mr. Castro-Aleman's choice. Simultaneously, he contrasted the final-order-and-removal option with the choice to "appeal [the removal order] to a higher court," clearly communicating that additional relief was possible. Once again, Mr. Castro-Aleman responded with a question regarding what he can do to hasten his return to his country, indicating an apparent desire to return to El Salvador and bring an end to lengthy immigration court proceedings.

Accordingly, the Court finds that Mr. Castro-Aleman did not satisfy his burden to demonstrate that he invalidly waived his right of appeal, and thus he has not satisfied the requirement that he exhaust all administrative remedies and show he was deprived of the opportunity for judicial review pursuant to 8 U.S.C. §§ 1326(d)(1)–(2).

### B. Fundamental Unfairness and Actual Prejudice

As discussed elsewhere in this Memorandum Opinion, a noncitizen defendant who collaterally challenges an underlying removal order must show each of the following: (1) that he exhausted any available administrative remedies, (2) that he was deprived of his right to judicial review of the removal order, and (3) that the removal proceedings were fundamentally unfair. *El Shami*, 434 F.3d at 663. Because the Court finds that Mr. Castro-Aleman's collateral challenge does not demonstrate presence of the first two factors, the Court need not assess whether the removal proceeding was also fundamentally unfair.

## V. CONCLUSION

For the reasons set forth above, the Court will deny Defendant Victor Manuel Castro-Aleman's Motion to Dismiss (ECF No. 17). An appropriate Order will accompany this Memorandum Opinion.

/s/<br>
Roderick C. Young<br>
United States District Judge

Richmond, Virginia
Date: August 2, 2023